UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re:<br><br>David Eugene Johnson and Kathryn Linda Johnson,<br><br>                    Debtors. | Bankruptcy Case<br>No. 20-40365-JMM |
|---|---|
| Austin Brown,<br><br>                    Plaintiff,<br><br>vs.<br><br>David Eugene Johnson,<br><br>                    Defendant. | Adv. Proceeding<br>No. 20-08049-JMM |

MEMORANDUM OF DECISION

**Appearances:**

    John C. Peterson, Twin Falls, Idaho, Attorney for Plaintiff.

    Steven L. Taggart, Idaho Falls, Idaho, Attorney for Defendant.

*Introduction*

The plaintiff, Austin Brown ("Plaintiff") commenced this adversary proceeding on August 6, 2020. Dkt. No. 1. The defendant, David E. Johnson ("Defendant"), filed a motion to dismiss the case, Dkt. No. 9, which this Court granted with leave to allow the Plaintiff to amend the complaint. Dkt. No. 14. The Court also dismissed Kathryn

MEMORANDUM OF DECISION − 1

Johnson, a codebtor in the underlying bankruptcy case and Defendant's wife, as a defendant. On October 16, 2021, Plaintiff filed an amended complaint and attached documents as exhibit "a", Dkt. No. 16, ("Amended Complaint"). Before the Court now is the Defendant's Amended Motion to Dismiss the Adversary Complaint ("Motion to Dismiss"), Dkt. No. 21, to which the Plaintiff objected. Dkt. No. 23. The Court heard oral argument on the matter on January 13, 3021, and thereafter took the motion under advisement. Dkt. No. 24.

The Court has considered the pleadings, the facts alleged in the Amended Complaint, the arguments submitted, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the motion. Rules 7052; 9014.[1]

## *Facts Alleged in the Complaint*

Defendant is the manager of Car Biz Boyz LLC d/b/a Freedom Auto Finders ("FAF"). FAF markets and sells vehicles on behalf of private sellers and retains part of the sale proceeds for its services. Plaintiff is one such private seller. On January 11, 2020, Plaintiff visited FAF's place of business to have FAF market and sell his truck. Plaintiff signed a marketing agreement, whereby FAF agreed to utilize its marketing skills to market Plaintiff's truck, field inquiries from potential buyers, and make every reasonable

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

MEMORANDUM OF DECISION − 2

effort to protect Plaintiff's identify and personal information in FAF's possession. Dkt. No. 16, Ex. 1. The marketing agreement repeatedly refers to "Freedom Auto Finders" or "FAF" throughout the document. The marketing agreement is signed by Plaintiff and, on a line titled "Agent Signature," a person named Lisa Bennett. The only reference to Defendant on the marketing agreement is on the second page of that document. Under a line that reads, "Thanks again for hiring us" appears a stamped signature of Defendant's name, David E. Johnson.

The marketing agreement uses the words "we," "our," or "us" repeatedly. Among others, here are a few examples:

- "You just hired a team of professionals and can be assured *we* will go to work, marketing your vehicle Worldwide. While *we* can't guarantee a sale, you can feel comfortable in knowing *we* will work hard for you."

- "*[W]e* take charge of the agreed upon reconditioning. . . . *[W]e* take photos and upload your vehicle to the worldwide web. *We* field email and phone inquiries and . . . *we* will show the vehicle on your behalf."

- "*We* are licensed and bonded . . . *We* protect your identity and private information *We* never share your personal information with anyone . . . *We* guarantee funds due from the sale of your vehicle."

- "When *we* get an offer, *we* will contact you . . . *Our* goal is to keep you informed throughout the process."

- "Thanks again for hiring *us*."

Dkt. No. 16, Ex. a (emphasis added).

After Plaintiff gave permission to FAF to sell his truck, the truck was sold for $38,000. However, the funds were never remitted to Plaintiff. On March 27, 2020,

MEMORANDUM OF DECISION − 3

Defendant filed a lawsuit against FAF and Defendant in Twin Falls County, Idaho alleging, among other claims, fraud, Idaho Consumer Protection Act violations, and breach of contract. On May 6, 2020, Defendant filed a voluntary bankruptcy petition.[2] On August 6, 2020, Plaintiff commenced this adversary proceeding seeking to have his debt declared nondischargeable pursuant to §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Defendant filed a motion to dismiss the adversary complaint, which this Court granted with leave to allow Plaintiff to file an amended complaint. Plaintiff amended his complaint on October 16, 2020, in which he seeks a declaration that the debt owed to him is nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(4).[3]

## Analysis and Disposition

A.    Standards on Motions to Dismiss

A motion to dismiss an adversary proceeding is governed by Rule 7012(b), which incorporates Civil Rule 12(b). *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 671–72 (9th Cir. 2007). In this case, Defendant moved for dismissal pursuant to Civil Rule 12(b)(6). The standards for such motions are well established. A Civil Rule 12(b)(6) motion may be based on either a "lack of a

---

[2] Defendant is a joint debtor in the underlying bankruptcy case with his wife, Kathryn Johnson. *In re Johnson*, No. 20-40365-JMM (Bankr. D. Idaho 2020).

[3] There is some confusion concerning the specific Code provisions under which Plaintiff seeks to have his debt declared nondischargeable. Plaintiff alleges the debt is nondischargeable pursuant to the same Code provisions that he raised in his original complaint. The Plaintiff's prayer for relief, however, only seeks relief under §§ 523(a)(2)(A) and (a)(4), and the Plaintiff argues in support of only these two provisions. Therefore, the Court will only consider the adequacy of these two claims.

MEMORANDUM OF DECISION − 4

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). To survive a Rule 12(b)(6) motion, the plaintiff must assert in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

In ruling on a Civil Rule 12(b)(6) motion, this Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011), and may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Simply put, this Court, weighing whether dismissal at this stage in the proceeding is warranted, must regard the facts alleged by Plaintiff in the Amended Complaint as true, draw all reasonable inferences in favor of Plaintiff, and consider whether Plaintiff has alleged sufficient facts to state a facially plausible claim under §§ 523(a)(2)(A) and 523(a)(4).

The issue is not whether Plaintiff will ultimately prevail but, rather, whether Plaintiff is entitled to offer evidence in support of his claims. *Schnieder v. California Dept. of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998). Although it may appear that

MEMORANDUM OF DECISION − 5

recovery is remote and unlikely on the face of the pleading, this is not the test. *Id.* The Idaho Bankruptcy Court has previously emphasized that, under the governing authorities, "it is a rare case that calls for [Civil] Rule 12(b)(6) relief." *Hillen v. Specialized Loan Servicing, Inc., LLC (In re Leatham)*, No. 16-00487-TLM, 2017 WL 3704512, at 2 (Bankr. D. Idaho 2017) (quoting *Quad Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re Quad-Cities Constr., Inc.)*, 254 B.R. 465–66 (Bankr. D. Idaho 2000)).

B.  Piercing the Veil Standards

Generally, members or managers of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member or manager. *See Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 594, 329 P.3d 368, 376 (2014) (equating the alter ego test to "piercing the corporate veil" in the context of a prior LLC statute). In other words, the formation of a limited liability company typically shields the managers from personal liability for the wrongful acts of the company. Here, Plaintiff seeks to pierce that veil, thereby breaking the shield and exposing Defendant, as the company's manager, to personal liability for claims against the company. Under this theory, Plaintiff's claims could be nondischargeable in Defendant's personal bankruptcy.

Plaintiff seeks to pierce the corporate veil of FAF to impose liability on Defendant for claims under § 523(a)(2)(A) and § 523(a)(4). Thus, before reaching the merits of Plaintiff's § 523 claims, the Court must first determine whether Plaintiff has asserted

MEMORANDUM OF DECISION − 6

facts that would render veil piercing appropriate. If the Court finds that piercing the veil of FAF's limited liability shield is inappropriate, Plaintiff's § 523 claims necessarily fail.

Idaho law provides limited liability to managers of an LLC based solely on a manager's position in the LLC. Idaho Code § 30-25-304.[4] However, the protection afforded to managers of an LLC is not unbridled. Although the Idaho Supreme Court has not addressed whether the protections of Idaho Code § 30-25-304 extend to the individual misconduct of the manager,[5] this Court has previously held that the Idaho Supreme Court would not extend the scope of the limited liability protection of Idaho Code § 30-25-304 beyond the protections expressly enumerated in the statute. *T Street LLC v. Jaques (In re Jaques)*, 615 B.R. 608, 629 (Bankr. D. Idaho 2020).[6] In other words, while Idaho Code §

---

[4] Idaho Code § 30-25-304 provides that:

> (a) A debt, obligation, or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or other liability of the company solely by reason of being or acting as a member or manager.

Idaho Code § 30-25-304(a).

[5] "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 485 (Bankr. D. Idaho 1999) (quoting *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997)). Thus, this Court concludes that, if faced with the exact facts presented here, the Idaho appellate courts would reach the same conclusion as this Court with respect to veil piercing issue.

[6] Although this Court in *T Street LLC v. Jaques (In re Jaques)* was determining whether a member of an LLC could be held liable for his or her own misconduct, Defendant here is a manager of an LLC. This Court, based on the plain language of Idaho Code § 30-25-304, finds no meaningful distinction with respect to the analysis in this case. Accordingly, the holding in *T Street LLC v. Jaques (In re Jaques)* also applies with respect to a manager's misconduct.

MEMORANDUM OF DECISION − 7

30-25-304 only affords protection to managers of an LLC because of that managerial status, such protection does not shield a manager from liability for his or her own tortious misconduct.

In his Amended Complaint, Plaintiff argues that piercing the veil here is appropriate because "FAF and Johnson failed to observe the proper formalities; for example he signs [FAF's] most recent annual report as 'President' but identifies himself as the 'manager.'" However, Idaho Code § 30-25-304 expressly rejects failure to follow proper formalities as a reason to pierce the veil of an LLC. Idaho Code § 30-25-304(b).[7] Put another way, FAF's failure to observe formalities is not a consideration on which this Court can rely to pierce FAF's veil to hold Defendant personally liable. Accordingly, this Court can only pierce the FAF's veil and hold Defendant personally liable for his own tortious or wrongful with respect to managing the LLC. *See T Street LLC v. Jaques (In re Jaques)*, 615 B.R. at 629.

To establish that FAF was the alter ego of Defendant, and thus pierce the veil, Plaintiff must prove "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *T Street LLC v.*

---

[7] Idaho Code § 30-25-304(b) states, "The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager for a debt, obligation, or other liability of the company."

MEMORANDUM OF DECISION − 8

*Jaques (In re Jaques)*, 615 B.R. at 630 (quoting *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho at 594, 329 P.3d at 376).

    I.     Unity of Interest

Because Idaho Code § 30-25-304 does not permit holding a manager liable simply because the LLC does not observe traditional formalities, the question presented here is whether there are sufficient facts alleged to demonstrate there was no distinction between the personalities of FAF and Defendant. *Id.* Although not all inclusive,[8] factors relevant to this determination include whether Defendant deposited his or her own money into the company's financial accounts for purposes other than meeting capital obligations; whether Defendant used company funds to pay his own obligations; and whether Defendant failed to maintain the separate identity of the company. *Id.*

The following facts are specifically alleged in Plaintiff's Amended Complaint to support piercing FAF's veil:

> 32. FAF was an alter ego of Johnson.
> 33. FAF's most recent annual report, the annual report relevant to this case, lists one manager, Johnson, and one member, DEJ Enterprises, Inc, another wholly owned entity of Johnson' (sic).
> 34. Johnson is also listed as the registered agent.
> 35. FAF and Johnson failed to observe the proper formalities; for example he signs FAF (sic) most recent annual report as "President" but identifies himself as the "manager". There is no indication that FAF has any other officers.

---

[8] This Court can consider a variety of factors to determine whether veil piercing is appropriate and there is no set number of factors that must be met before piercing the corporate veil. *T Street LLC v. Jaques (In re Jaques)*, 615 B.R. at 630 (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 421 P.3d 187, 200 (2018)).

MEMORANDUM OF DECISION – 9

> 36. As a result, there is a unity of interest and ownership between FAF and Johnson and it would promote injustice if Johnson is allowed to avoid liability to Brown and other similarly situated customers.

Dkt. No. 16.

That FAF was an alter ego of Defendant is a conclusory statement, not a fact that supports veil piercing. Simply having one manager of an LLC does not justify piercing the veil of the LLC to hold the single manager personally liable for acts of the LLC. *See Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho at 595, 329 P.3d at 377. Idaho's LLC statutes permit a corporation to be a member of an LLC,[9] and this Court has previously rejected the single enterprise corollary theory to the veil piercing doctrine. *See In re All Terrain, LLC*, 622 B.R. 770, 777 (Bankr. D. Idaho 2020).[10] Thus, none of these alleged facts alone, even assuming they are true, support piercing FAF's veil in this case.

---

[9] Idaho's LLC statutes define "member" as a person that has become a member of a limited liability company under Idaho Code § 30-25-401 or was a member in a company when the company became subject to this chapter under Idaho Code § 30-25-110, and as not dissociated under Idaho Code § 30-25-602. A "person" is defined as "an individual, business corporation, nonprofit corporation, partnership, limited partnership, limited liability company, general cooperative association, limited cooperative association, unincorporated nonprofit association, statutory trust, business trust, common-law business trust, estate trust, association, joint venture, public corporation, government or governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." Idaho Code § 30-21-102(35).

[10] The single enterprise theory has emerged as a controversial veil piercing theory. Some courts have adopted this theory when multiple commonly controlled companies integrate their resources to achieve a common purpose to such an extent any individual identities of the entities have effectively merged into one. *In re All Terrain, LLC*, 622 B.R. at 774 (citing 50 A.L.R.7th Art. 2 (Originally published in 2020)). Although Plaintiff has made no such argument in the Amended Complaint, a reasonable inference from this fact is that, because the corporation, controlled by defendant, was a member of the LLC, also controlled by Defendant, Plaintiff believes there was a lack of corporate formalities that justify piercing FAF's veil. However, this alone is not enough to the pierce the veil, and, as stated above, this theory was rejected in *All Terrain* because this Court does not believe the Idaho Supreme Court would recognize the doctrine under Idaho law.

MEMORANDUM OF DECISION - 10

Plaintiff incorporated other allegations from the complaint, however, in support of his veil piercing argument. Plaintiff went to FAF's location in order to have the LLC sell his truck on his behalf. Dkt. No. 16, at ¶ 15.[11] The marketing agreement entered into by Plaintiff identifies "Freedom Auto Finders" and gives the business address for the company. The marketing agreement refers to FAF throughout the document. The marketing agreement, however, also uses the words "we" or "our" or "us" when, apparently, referring to FAF and the FAF "team." Just below a line that reads, "Thanks again for hiring *us*" (emphasis added) appears a stamped signature of Defendant's own name, "David E. Johnson." Recall that the primary question here is whether there are sufficient facts alleged that there was no distinction between the personalities of FAF and Defendant. *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho at 595, 329 P.3d at 377. The use of these plural pronouns blurs the distinction between FAF and Defendant. Although the evidence is sparse, this Court finds, based upon the facts alleged in the Amended Complaint and the marketing agreement attached thereto, that Plaintiff has sufficiently asserted facts to satisfy the element of unity of interest.

---

[11] It is unclear whether Plaintiff spoke directly to Defendant. The Amended Complaint states that "[Defendant], through FAF, induced [Plaintiff] to enter into to a Marketing Agreement (hereinafter collectively the "Marketing Agreement") dated January 11, 2020 [under] the auspices that FAF would market [Plaintiff's] Ford for sale." Dkt. No. 16 at ¶ 16. However, the marketing agreement is signed by someone other than Defendant.

MEMORANDUM OF DECISION − 11

## II.    Inequitable Result

The second factor that must be met for veil piercing is the requirement that an inequitable result will follow. This factor "requires something less than an affirmative showing of fraud but something more than the mere prospect of an unsatisfied judgment." *Lunneborg v. My Fun Life*, 163 Idaho at 421 P.3d at 200 (citing *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 756 (7th Cir. 2012)).

In this case, Defendant or FAF sold Plaintiff's vehicle and did not remit the proceeds to Plaintiff. Not only was Plaintiff deprived of the proceeds from the sale of his truck, which may lead to an unsatisfied judgment, but Plaintiff was left without the truck itself. Plaintiff is unable to use his vehicle for his own personal use and is also unable to sell the truck and obtain any proceeds that such a sale might generate. The Court finds Plaintiff has asserted sufficient factual matter to satisfy this element.

Accordingly, Plaintiff has asserted sufficient factual matter with respect to both elements of the veil piercing issue to allow the parties to proceed to gather evidence in support of their respective positions on this issue. This determination, however, only applies with respect to veil piercing, and the Court now turns to whether the Plaintiff has alleged sufficient facts to state a facially plausible claim under §§ 523(a)(2)(A) and 523(a)(4).[12]

---

[12] Defendant argues that both of these claim should be dismissed because, among other things, the claims are actually properly aimed at FAF and not Defendant, and piercing the corporate veil is inappropriate. However, as stated above, the Court has determined that Plaintiff has alleged sufficient factual matter to

MEMORANDUM OF DECISION − 12

C. <u>Section 523 Exceptions to Discharge Standards</u>

*I.    Section 523(a)(2)(A)*

Plaintiff's Amended Complaint asks this Court to declare the debt owed to him by Defendant to be nondischargeable pursuant to § 523(a)(2)(A), which provides that an individual debtor will not be discharged from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition:

§ 523(a)(2)(A).

Thus, to prevail on his claim under § 523(a)(2)(A), Plaintiff must prove, by a preponderance of the evidence: (1) a misrepresentation, fraudulent omission, or deceptive conduct by the debtor in obtaining money, property, services or credit; (2) debtor's knowledge of the falsity or deceptiveness of his statement or conduct; (3) that the representations were made with the intent to deceive Plaintiff; (4) that Plaintiff justifiably relied on such representations; and (5) that the Plaintiff sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Lin v. Hunt (In re Hunt)*, No. AP 20-06015-JDP, 2020 WL 6821784, at *3 (Bankr. D. Idaho 2020) (citing *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) and *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085

---

allow his veil-piercing claim to proceed. Accordingly, Defendant's argument that Plaintiff's other claims should be dismissed because Plaintiff cannot pierce FAF's veil is unavailing.

MEMORANDUM OF DECISION − 13

(9th Cir. 2000)). The Court will consider whether Plaintiff has alleged sufficient facts to withstand Defendant's motion to dismiss.

        1.      Misrepresentations, fraudulent omission, or deceptive conduct

Plaintiff alleges several misrepresentations or omissions occurred which give rise to his § 523(a)(2)(A) claim, all of which are grounded in the marketing agreement. Plaintiff alleges that FAF or Defendant omitted from the marketing agreement the true purpose for inducing Plaintiff into entering the agreement, which was to raise funds exclusively for FAF and Defendant. Plaintiff further alleges Defendant made a statement in the marketing agreement that provides, "FAF generally issues payment of all monies due, within 15 days from the date of sale." Dkt. No. 16, at ¶ 26. Plaintiff also asserts that the Defendant directed employees of FAF to tell potential customers that FAF would market and sell the customer's vehicle and then remit the proceeds back to the customer, but the true purpose was to sell the customer's vehicle and retain the full amount of the sale proceeds. Ultimately, Defendant never remitted the sale proceeds back to Plaintiff in accordance with the representation made in the marketing agreement, let alone within the fifteen days expressly stated therein. In other words, the representations made by Defendant identified by Plaintiff were not true. Therefore, Plaintiff has sufficiently asserted facts that satisfy this element.

        2.      Knowledge of the falsity or deceptiveness of the statement or conduct

Absent direct evidence of knowing misrepresentation, reckless disregard for the truth of a representation satisfies the requirement that the Defendant made an

MEMORANDUM OF DECISION − 14

intentionally false representation. *Welch v. Laraway (In re Laraway)*, No. 09-01831-TLM, 2010 WL 3703272, at *7 (Bankr. D. Idaho 2010) (citing *Arm v. Morrison (In re Arm)*, 175 B.R. 349, 354 (9th Cir. BAP 1994)). Additionally, a promise made without a present intent to perform satisfies § 523(a)(2)(A), as does a representation which the Defendant knew or should have known was outside of his prospective ability to perform. *Welch*, 2010 WL 3703272, at *6 (citing *Bell v. Smith (In re Smith)*, 98.4 I.B.C.R. 119, 120 (Bankr. D. Idaho 1998)).

Plaintiff asserts that Defendant and FAF did not have the proceeds available to pay Plaintiff even if Defendant was able to sell Plaintiff's vehicle. Plaintiff also asserts that Defendant and FAF already owed money to other clients, and therefore knew that there were no funds available with which Plaintiff could be paid because any sale proceeds from Plaintiff's vehicle would necessarily have to go towards paying off the debts to other customers. Therefore, according to the facts asserted by the Plaintiff and presumed to be true, Defendant knew that the statements in the marketing agreement were false because the funds could not be remitted to Plaintiff. In other words, Defendant knew or should have known that any promise to remit sale proceeds to Defendant was outside of Defendant's prospective ability to perform. Accordingly, Plaintiff has asserted facts sufficient to satisfy this element.

   3.  Intent to deceive

Because direct evidence of intent to deceive is rarely available, a party's intent to deceive may be inferred from the totality of the circumstances and circumstantial

MEMORANDUM OF DECISION − 15

evidence. *Welch*, 2010 WL 3703272, at *7 (citing *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997)).

Assuming the facts alleged in the Amended Complaint are true, Defendant and FAF knew that there were no funds available to pay Plaintiff if his truck was sold. Likewise, if Defendant and FAF were in debt to previous clients, it was because those clients' vehicles had been marketed and sold, but those funds were also not remitted to those clients. Therefore, the only way those debts could be repaid is by inducing more clients, such as the Plaintiff in this case, to have their vehicle be sold by FAF and then use those funds to pay off previous clients. A reasonable inference, however, is that if new clients were aware of the dire financial situation in which Defendant and FAF found themselves, they would likely not allow their vehicles to be sold. Here, assuming the asserted facts in the Amended Complaint to be true, the totality of the circumstances suggest that Defendant intended to deceive the Plaintiff. Plaintiff has asserted facts sufficient to satisfy this element.

    4.  Justifiable reliance

To satisfy this element, the Court must determine if Plaintiff justifiably relied upon Defendant's misrepresentations. *Fetty v. DL Carlson Enterprises, Inc. (In re Carlson)*, 426 B.R. at 855 (citing *Field v. Mans*, 516 U.S. 59, 74–75, 116 S. Ct. 437, 133 L. Ed.2d 351 (1995) (determining § 523(a)(2)(A) requires justifiable reliance as opposed to reasonable reliance)). Justifiable reliance is a subjective standard that looks to the qualities and characteristics of the particular plaintiff, the knowledge and relationship of

MEMORANDUM OF DECISION − 16

the parties, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. *Field v. Mans*, 516 U.S. at 71, 116 S. Ct. 437, 133 L. Ed. 2d 351.

Plaintiff sought out the services of Defendant and FAF specifically to have his truck marketed and sold. The marketing agreement entered into by Plaintiff and FAF describes exactly the actions and efforts that FAF would make to market and sell Plaintiff's truck. Of course, FAF holds itself out as a business that provides this exact service. There was no reason for the Plaintiff to not rely on the representations made by FAF or Defendant by way of the marketing agreement. Therefore, Plaintiff has asserted sufficient facts to satisfy this element.

     5.    Damages

Plaintiff must prove he was damaged as a proximate cause of the Defendant's fraudulent representation. *Fetty v. DL Carlson Enterprises, Inc. (In re Carlson)*, 426 B.R. at 857. In other words, a debt that is nondischargeable under § 523(a)(2)(A) must be traceable to the alleged fraud. *Field v. Mans*, 516 U.S. at 60, 116 S. Ct. 437, 133 L. Ed. 2d 351.

Plaintiff has not received any of the proceeds from the sale of his truck. Although his truck was sold by FAF and Defendant, none of the funds were remitted to Plaintiff per the marketing agreement. Plaintiff believed that he would receive the sale proceeds soon after the truck was sold, but instead was left with neither the ability to sell his truck to cover his losses nor any of the proceeds received by FAF and the Defendant. As a result,

MEMORANDUM OF DECISION − 17

as stated in the Amended Complaint, Plaintiff has been damaged in the amount of at least $38,000. Accordingly, Plaintiff has pled facts sufficient to satisfy this element.

      6.      Conclusion

Plaintiff has asserted sufficient factual matter, which, accepted as true, state a claim for relief under § 523(a)(2)(A) that is at least plausible on its face. Therefore, Plaintiff's § 523(a)(2)(A) claim will be allowed to proceed.

    II.    *Section 523(a)(4)*

Next, Plaintiff seeks a declaration that the debt owed to him is nondischargeable pursuant to § 523(a)(4), which provides that an individual debtor may not discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. § 523(a)(4). Here, Plaintiff alleges that Defendant's action constitutes embezzlement, such that Defendant's debt to Plaintiff is nondischargeable.

Federal law controls the definition of embezzlement under § 523(a)(4). *First Delaware Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997). In this context, embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895)). To prevail on his claim, Plaintiff must prove three elements: 1) property was rightfully in the possession of a nonowner; 2) nonowner's appropriation of the property to a use other than that for which it was entrusted; and 3) circumstances indicating fraud. *Netwest Commc'ns Group,*

MEMORANDUM OF DECISION − 18

*Inc., et al v. Mills (In re Mills)*, No. 05-04967-TLM, 2008 WL 2787252, at *4 (Bankr. D. Idaho 2008) (citing *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d at 555). "Circumstances indicating fraud" means "such circumstances that would indicate the presence of fraud or that [the debtor] acted with fraudulent intent." *Id.* (citing *Kiss Enters., Inc. v. Mirth (In re Mirth)*, 99.4 I.B.C.R. 149, 151 (Bankr. D. Idaho 1999)).

In this case, the property rightfully in possession of the nonowner are the sale proceeds from Plaintiff's truck. The parties entered into the marketing agreement whereby Defendant would act on Plaintiff's behalf to market and sell Plaintiff's truck and remit the proceeds to Plaintiff. The second element is also met because the sale proceeds were not used in the way for which the proceeds had been entrusted: After Plaintiff's truck was sold, the sale proceeds were never remitted to Plaintiff pursuant to the terms of the marketing agreement. Finally, the fact that the funds were used for some other purpose than merely remitting the proceeds to Plaintiff when the proceeds should have come from the very sale of Plaintiff's truck, and not some other person's vehicle, is a circumstance that indicates the presence of fraud or that Defendant acted with fraudulent intent. *See Moonan v. Bevilacqua (In re Bevilacqua)*, 53 B.R. 331 (Bankr. S.D. N.Y. 1985) (finding that the defendant had committed embezzlement for the purposes of § 523(a)(4) where defendant-agent, acting on behalf of plaintiff, agreed to sell plaintiff's vehicle and remit the proceeds to plaintiff, but did not do so and used the funds for some

MEMORANDUM OF DECISION − 19

other purpose).[13] Accordingly, Plaintiff has asserted sufficient factual matter, which, accepted as true, state a claim under § 523(a)(4) that is at least plausible on its face. Therefore, Plaintiff's § 523(a)(4) claim will be allowed to proceed.

### *Conclusion*

Plaintiff has asserted factual matter sufficient to support his claims for relief under §§ 523(a)(2)(A) and 523(a)(4) that are not subject to dismissal at this juncture. Plaintiff's Objection to Defendant's Motion to Dismiss, Dkt. No. 23, will be sustained, and Defendant's Motion to Dismiss the Amended Complaint, Dkt. No. 21, will be denied. A separate order consistent with this decision will be entered.



DATED: February 10, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[13] Defendant's argument that the proper inquiry under § 523(a)(4) is to look to whether Defendant embezzled Plaintiff's truck and not the sale proceeds of the truck does not hold water. Defendant cites to no authority in support of his position, and the case law cited above indicates that this is a facially plausible argument presented by Plaintiff.

MEMORANDUM OF DECISION − 20